## SIGLER ET AL. *v.* SHELLEY ET AL.

[No. 8,262. Filed May 26, 1914. Rehearing denied October 8, 1914.]

1. WILLS.— *Construction.*— *Estates Devised.*— Under a will bequeathing testator's personalty to his wife with the provision that, should her death occur before his, the same should be equally divided among all his children living at his death, and devising the realty to his wife for life, with the provision that at her death the same should descend in certain described portions to each of his children excepting A. and P., and declaring that the devise to his daughters S. and H. should be for life only and that on the death of both, the same should descend to testator's children "living at their death and the descendants of such as are dead, *per stirpes*", and directing that on the death of his wife the expenses of her sickness and funeral should be paid by the "above named devisees" and A. and P. in proportion to the value of each devise, and explaining that no provision in the will was made to A. and P. on account of advancements made to them, the intention of the testator is obvious to include A. and P. in the clause disposing of the remainder in the realty devised to the two daughters, and they were entitled to share with the other children of testator and the descendants of such as were dead. pp. 689, 691.

2. WILLS.—*Construction.—Intention of Testator.*—The primary object in construing a will is to ascertain the intent and meaning of the testator. p. 691.

3. WILLS.— *Construction.— Meaning of Clauses.*— In construing a particular clause of a will, the court should look to the whole will as well as to the circumstances and conditions surrounding the testator at the time of its execution. p. 691.

4. WILLS.—*Construction.—Disposition of Property.*—A will should be construed so as to give effect to all its provisions, if possible, and when the intention of the testator is doubtful the instrument will be given that construction which casts the property as nearly as possible where the law would cast it if the will were silent. p. 691.

5. WILLS.—*Construction.—Estate Devised.*—A devise of real estate to testator's two unmarried daughters "for and during their natural lives and during the life of the survivor of them", and after the death of both, the fee simple to testator's children, "living at their death, and the descendants of such as are dead, *per stirpes*", a life estate was given to the unmarried daughters and at their death their shares were to revert to and be divided equally among all their brothers and sisters then living, and the heirs of such as were dead. p. 691.

6. WILLS.—*Construction.*—*Receipts for Advancements.*—A receipt taken by testator for an advancement made to one of his daughters prior to the execution of the will, as well as the fact that he had, shortly after the execution of the will, surrendered and cancelled notes executed by a son for a conveyance theretofore made by him to the son, may be considered as items of evidence tending to show the true condition and circumstances surrounding the testator at the time the will was executed, for the purpose of aiding the court in construing the will, but they may not be given any additional force as showing a surrender of any rights to share in the remainder of a life estate created by the will. p. 693.

From Lagrange Circuit Court; *James S. Drake,* Judge.

Action by Matilda Ann Shelley and others against Paul E. Sigler and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Hanan, Ewbank & Hanan, Merritt & Duff* and *Sidney K. Ganiard,* for appellants.

*Frank J. Dunten* and *Elias D. Salsbury,* for appellees.

IBACH, P. J.—Appellees instituted this action to quiet their title to an undivided five-sixths of thirty-five acres of land in Lagrange County, Indiana. Their claim is based on the will of William Sigler, the father of all the plaintiffs except plaintiff James A. Shoup, who is the grantee of Solomon Sigler, a son of said William. The defendants were Paul E. Sigler and Amanda E. Moore, who were two other children of William Sigler, Harriet Winstanley, a grandchild, and Solomon Sigler and his wife, grantors to James A. Shoup, and Henry Blough, grantee of said Paul and Amanda. Henry Blough died before judgment and Noah K. Blough as administrator of his estate and Noah K. Blough as his heir were made defendants by supplemental complaint. There was a trial by the court, special findings made, conclusions of law stated, and a decree for appellees.

Errors are assigned in the court's actions in overruling appellants' several demurrers to the complaint, and in over-

ruling appellants' exceptions to each of the conclusions of law.

The will, omitting portions unessential to be considered in this appeal, is in the following words. In order to facilitate reference in the remainder of the opinion, we have placed in italics the portions the construction of which is in question, and have designated certain clauses by Roman letters:

"Item 1. I direct that all my just debts and funeral expenses be first paid. Item 2. All of my personal property I give and bequeath to my wife, Lydia Sigler, and in case my said wife should die before my death (A) *then said personal property shall be equally divided among my children living at my death, share and share alike.* Item 3. My real estate, consisting of (describing it) I give and devise to my beloved wife for and during her natural life only, and at her death said real estate shall go and descend to the following named persons and as follows, to-wit: To my son, Solomon F. Sigler, the following part of said real estate to wit: (describing it). To my son, Samuel L. Sigler, the following part of said real estate to wit: (describing it). To my son, John M. Sigler, the following part of said real estate to wit: (describing it). To my daughters Susan C. Sigler, and Harriet Jane Sigler, the following part of said real estate: (describing it). For and during their natural lives and during the life of the survivor of them; after the death of both said Susan C. Sigler and said Harriet Jane Sigler, then the fee simple of said thirty-five acres of land (B) *shall go and descend to my children living at their death, and the descendants of such as are dead, per stirpes.* To my daughter Mary Emeline Mosher, the following part of said real estate to wit: (describing it). To my daughter Amelia S. Shoup, wife of James A. Shoup, the following part of said real estate to wit: (describing it). To my daughter Matilda Ann Shelly, the following part of said real estate, to wit: (describing it). At the death of my said wife, I direct that all of her expenses of last sickness and funeral expenses be paid by (C) *the above-named devisees and my two children Amanda E. Moore and Paul E. Sigler hereinafter mentioned, in proportion to the value of each devise, and portion heretofore given to said Amanda E. Moore and Paul E. Sigler and said expenses are hereby made a charge*

*upon each and all of said devisees, and upon said portions heretofore given to said Amanda E. Moore and Paul E. Sigler accordingly.* (D) *Whereas I have heretofore advanced to my children Amanda E. Moore and Paul E. Sigler and paid and delivered to them what I deem to be their share of my estate to which they are entitled, I have made no provision for them in this will.*"

The court finds that testator's will was executed on July 11, 1900. Prior to that time, in 1886, the husband of Amanda purchased from her father a 40-acre tract of land adjoining his farm, and as a part of the consideration had executed notes amounting to $900, upon which notes interest was paid until 1898, when by proper conveyance this land was reconveyed to testator and his wife, and by them conveyed directly to Amanda, at which time, she with her husband consenting, executed the following receipt:

"I, Amanda Moore, daughter of William Sigler, hereby in consideration of Nine Hundred dollars and other advancements made to me by my father (acknowledge) this my receipt in full of any and all claims to his estate as his heir, intending this receipt to be in full of my share in the same."

In the same year, testator also sold to his son Paul a tract of land likewise adjoining his farm, and he had taken Paul's note for $900 as a part consideration of the purchase price thereof, which testator held at the time the will was made, and upon which he likewise collected interest. Shortly before testator's death, he conveyed to Paul a dwelling house to be removed from his real estate after his death, and surrendered the aforesaid note, whereupon Paul, with his wife executed a receipt to his father in all essential respects similar to that executed by Amanda and her husband. Testator died June 20, 1902. The will was probated and recorded seven days later, but the written instruments signed by both Amanda and Paul were not recorded. The personal property owned by testator at the time of his death was sold for $1,305.82, and his debts amounted to $2,434.60.

His widow died on December 11, 1903, and in order to pay the debts of said testator and the burial expenses of his widow and to relieve testator's real estate from the charge and incumbrance thereof, seven of testator's children contributed money to the administrator with will annexed. Harriet Jane Sigler died on April 7, 1905, and Susan C. Sigler died on August 15, 1910. Prior to the bringing of this suit Henry Blough purchased from each, Paul, Amanda, and Harriet Winstanley, a granddaughter, an undivided one-eighth interest in the thirty-five acres of land devised to Susan C. Sigler and Harriet J. Sigler, and paid each $551.25, receiving in return from each, warranty deeds of conveyance. Before he made such purchase, Blough had full notice and knowledge of the provisions of testator's will, but had no knowledge of the instruments executed by Paul and Amanda, when the deeds of conveyance of lands to them were made, and plaintiffs themselves did not know of the existence of such instruments until after such purchase by Blough had been made and the deeds executed.

Upon facts found substantially as above, the court states as conclusions of law that appellees are the owners of the land described in the complaint, and that the appellants have no right or interest therein.

The clause which disposes of the real estate in suit (B), states that "after the death of both Susan C. Sigler and Harriet Jane Sigler, then the fee simple of said

1. thirty-five acres of land shall go and descend to my children living at their death and the descendants of such as are dead, *per stirpes.*" The intention of this clause is clear. The fee in the land described was devised in equal proportions as tenants in common to all his children or their descendants *per stirpes,* at the death of the two daughters named, subject only to the life estate which was bequeathed to his wife and said daughters. And such division will now after the death of the wife and two daughters be enforced

unless the evident intention on the part of the testator is annulled by other provisions of the will. The question then is, What effect must be given the item (B) when considered with the other provisions of the will, and the facts found by the court as to the circumstances existing when the will was executed? It is insisted by appellant that since Paul and Amanda were two of testator's children and were living at the death of the widow and two daughters to whom life estates were given, that item (B) clearly gives them equal shares with the other surviving children of the testator, and that those shares are not taken away by any other portions of the will; that it was the intent of the testator to allow his children to share equally in whatever he left, aside from the farm as he divided it, appears from provision (A) ''that in case my wife should die before my death, then said personal property shall be equally divided among my children living at my death share and share alike.'' On the other hand, it is argued by appellees that the estate given Paul and Amanda by the devise of the fee-simple in said thirty-five acres by item (B) is annulled by the portion of the will providing that testator's real estate shall go and descend to the following persons: (naming all except Paul and Amanda) and the direction that the widow's expenses of last sickness and funeral ''be paid by the above named devisees and my children Amanda and Paul.'' It is insisted that the language of item (C) shows that Amanda and Paul were not included among those who should share in the reversionary interest given by item (B) because they are not among the ''following named persons'', and are distinguished by the testator from ''the above named devisees'', and it is insisted that ''my children living at my death'', should be construed to mean ''my children named as devisees living at my death.''

In construing a will the primary object is to ascertain the intent and meaning of the testator, and it oftentimes becomes necessary in order to determine the true meaning

of a particular clause to look to the whole will as
2. well as to the circumstances and conditions sur-
rounding the testator at the time of its execution.
3. A will should also be so interpreted as to give effect
to each and all of its provisions, and if possible it
should not be so construed as to leave any part of it
4. useless and meaningless, and when the intent of the
testator is doubtful, an interpretation will be given
to the will which casts the property as nearly as possible
where the law would cast it if the will were silent. Keeping
in mind these general rules, does the will of the testator
exclude his two children Paul and Amanda from sharing
in the reversion of the 35 acres under the devise "to my
children living at their death" referring to the death of
the wife and two daughters, the life tenants, all of whom are
now deceased? We think not and we are unable to find
any other clause which takes away the shares thus given.

It is clear to us that by the clause of the will just re-
5. ferred to, a life estate was given to the two unmarried
daughters, and at their death their share of the estate
was to revert to and be divided equally among all their
brothers and sisters then living, and the heirs of such as
were dead.

We cannot agree with appellees that the language of the
clause referred to does not include Paul and Amanda.
When primary bequests are made, the testator directs that
at his wife's death his real estate shall go and descend
1. to the following named persons, naming all the chil-
dren other than Paul and Amanda, granting a life
estate only to the daughters Susan and Harriet. It appears
that the purpose of the testator was to give to each child in
the primary division of his property approximately equal
shares, and having made an advancement to his son Paul
and his daughter Amanda, of what he considered to be their
just proportion in the primary division, he says he has made
no provision for them in his will, that is, no primary pro-

vision, but that is not inconsistent with the intent on his part to provide at all times equally for all his children, and that the two for whom no primary provision was made in the will should share in that portion of his real estate which was given to his unmarried daughters for life, and at their death to his children. Nor is this conclusion inconsistent with the provision that the widow's expenses of last sickness and funeral should be "paid by the above named devisees and my two children, Paul and Amanda, hereinafter mentioned, and in proportion to the value of each devise and the portions heretofore given to Amanda and Paul." No first or primary devise having been mentioned in the will as to Amanda and Paul, they could not have been properly referred to in this clause as devisees, but having received their primary share by advancement, they were properly referred to as his other children, who were required to pay a portion of such expenses for the purpose of still keeping the division equal. Not having yet been mentioned by name in the will, they could not have been included among *above named* persons of any description.

There is nothing in any item of the will to indicate an intent to disinherit any of testator's children or to make the share of any unequal to that of any other, but rather the contrary appears with reasonable certainty. In the first place he sold portions of his real estate to both the husband of Amanda and to Paul, and continued to collect interest on the deferred payments in each case. Shortly before his death, however, he arranged it so that the title which had been conveyed to the husband of Amanda was conveyed to Amanda, and the notes evidencing deferred payments were cancelled and surrendered, within a short period of time, doubtless realizing the approach of his demise, his will was executed, by means of which he provided for his remaining children in somewhat similar shares, and having cared for his daughter Amanda so far as the primary division of the property was concerned, he likewise surrendered

to Paul the note which he had given, thereby by actual conveyance also he provided for Paul so far as his primary share was concerned. The further intent to provide equally for all is evidenced by the provision relative to the debts.

As to the fee in the 35 acres, it is provided should pass to his children at the death of his two maiden daughters, and such fee is not cut down by any of the provisions of the will. The clause that he makes no provision for Paul and Amanda in the will relates wholly to the primary division, and the clause "the above named devisees and my two children" could scarcely have been worded differently in view of the actual situation of the several children. We find no evidence of any intention to exclude the children Paul and Amanda from those mentioned as "my children" in any item of the will.

The receipt signed by Amanda before the execution of her father's will, showing an advancement to her, and the fact that he had conveyed to Paul certain lands and 6. taken notes as part payment, which notes were surrendered shortly after the execution of the will, may be considered as items of evidence tending to show the true condition and circumstances surrounding the testator at the time of its execution, to aid the court in construing the will according to the testator's real purpose and intent, but we do not think they should be given any additional force, and it is not inconsistent with the announcements made heretofore to hold that such receipts evidenced only the acknowledgment of their share in the primary division of testator's estate, and there is nothing in the will that even tends to indicate that they were to be given any additional meaning and certainly not to the extent of saying that the testator thereby intended to prevent such children from participating in the remainder of testator's estate. We think that these receipts should be construed simply as evidencing the receipt of the share in their father's estate which each would be entitled to receive at his death, as the

law would cast it, and not as surrendering any rights which they might have to share in any remainder left after the termination of a life estate of their sisters. The secondary distribution made by testator's will of the lands in which a life estate is given to his unmarried daughters, as we have construed the will, is exactly as the law would cast their share of their father's estate, should they remain unmarried until their death. We do not think that the receipts should be construed together with the will, or as executed with any knowledge of the execution or contents of said will, but rather as above stated. We find nothing in these receipts, construed alone, or even construed together with the will, which would evidence any intention to relinquish a right to the secondary distribution of testator's estate.

The judgment is reversed with directions to the trial court to restate its conclusions of law in accordance with this opinion, and render judgment correspondingly.

NOTE.—Reported in 105 N. E. 403. As to the jurisdiction of equity to construe wills, see 129 Am. St. 78. See, also, under (1, 2) 40 Cyc. 1386; (3) 40 Cyc. 1413, 1392, 1431; (4) 40 Cyc. 1413, 1411; (5) 40 Cyc. 1411; (6) 40 Cyc. 1431.